1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM FREDERICK JENSEN,

                    Plaintiff,

        v.

STATE OF WASHINGTON, et al.,

                    Defendants.

CASE NO. 2:16-cv-1963-MJP-BAT

**REPORT AND
RECOMMENDATION**

Plaintiff William Frederick Jensen, who is currently confined at the Monroe Correctional Complex-Twin Rivers (MCC), alleges defendants violated his 42 U.S.C. § 1983 civil rights under the 14th Amendment, the Americans with Disabilities Act (ADA), and Washington's Law Against Discrimination (WLAD). Dkt. 32. Defendants State of Washington, Washington Department of Corrections (DOC), Eldon Vail, Bernard Warner, Stephen Sinclair, Eugene Medutis, and Steven D. Sundberg move for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that Mr. Jensen's claims are barred by the applicable statutes of limitation and/or qualified immunity. Having considered the parties' submissions, the undersigned recommends that Defendants' motion for summary judgment be granted.

## FACTS

**A.    Plaintiff's Complaint and Amended Complaint**

Mr. Jensen, acting *pro se*, filed his original Complaint on December 22, 2016. Dkt. 1 and 2. The complaint was docketed on January 13, 2017, after the Court denied Mr. Jensen's application to proceed *in forma pauperis* (IFP) and he paid the filing fee. Dkt. 18. Following

REPORT AND RECOMMENDATION - 1

screening, the Court declined to serve the complaint due to numerous deficiencies but because

Mr. Jensen was proceeding *pro se*, it granted him leave to file an amended complaint. Dkt. 21.

After obtaining counsel, Mr. Jensen filed his Amended Complaint on May 31, 2017. Dkt. 32.

The only dates provided in the Amended Complaint are February 1, 2005 – the date Mr.

Jensen began his custody in the DOC; and May 10, 2010 – the date Mr. Jensen made a report to

DOC officials of a Prison Rape Elimination Act (PREA) violation. The only facts alleged in the

Amended Complaint are that after Mr. Jensen made the PREA report, he was subjected to

retaliation by "various DOC officials," which retaliation included being unjustly placed in

administrative segregation (Ad Seg) on two occasions, being denied medical treatment while in

Ad Seg, damage to two boxes of legal documents, and opening his legal mail outside of his

presence. Dkt. 32 at 6.

**B.    Discovery Responses and Declaration in Opposition**

In his answers to written discovery, Mr. Jensen listed twelve causes of action with

corresponding dates. Dkt. 54, Declaration of Newell Smith, ¶ 5, Exhibit 2.[1] Mr. Jensen also

produced over 500 documents. Counsel for defendants attached as Exhibit 4 those documents

produced in which the names of any of the individual defendants appeared. *Id.*, Smith Decl. Ex.

4. In his declaration in opposition, Mr. Jensen provided additional factional allegations (Dkt. 63,

Exhibits A though EE), which the Court has included in the following factual summary.

**1.    May 10, 2010 PREA Report**

On May 10, 2010, at the Washington State Penitentiary (WSP), after witnessing an

unnamed DOC correctional officer physically and sexually threaten a mentally ill Hispanic

---

[1] Counsel for defendants numbered the list of claims provided by Mr. Jensen for reference on the exhibit copy. *See* Dkt. 54, Smith Decl. Ex. 3 at 10-13.

inmate, Mr. Jensen reported the misconduct to the PREA hotline. The misconduct was immediately investigated and the officer resigned. However, according to Mr. Jensen, within weeks of the investigation, the resigned officer's colleagues (none of whom are named as parties to this lawsuit) began systematically retaliating against inmates in Mr. Jensen's unit – reducing their time to shower, make calls, use the library, attend religious services, have visitation. For example, Mr. Jensen was accused of showering without permission and was infracted and sanctioned because of changes made to the shower schedule after the PREA investigation. On August 15, 2010,[2] Mr. Jensen sent a letter to Defendants Vail and Sinclair asking them to intervene in the misconduct of DOC employees allegedly retaliating against him and other inmates. Dkt. 63, ¶¶ 6-13, Exhibit E.

Mr. Jensen received a response to his August 15, 2010 letter from someone in Defendant Vail's office on August 31, 2010. *Id.*, Exhibit J. The copy attached to his declaration contains only the first page of the letter so the sender cannot be identified. The author addresses changes made in the BAR Unit[3] including the provision of dedicated shower gates to enhance safety.

### 2.    August 16, 2010 – September 22, 2010 Segregation

Mr. Jensen alleges that on August 16, 2010, he was falsely accused of attempting to pay another inmate to assault his unit "UM" and was placed in Administrative Segregation ("Ad

---

[2] Mr. Jensen mistakenly refers to the date of this letter as July 15, 2010, but the letter attached as Exhibit E is dated August 15, 2010.

[3] Mr. Jensen is a former King County Sheriff's deputy who was convicted of two counts of solicitation to commit first-degree murder. Because of his status as a former law enforcement officer, Mr. Jensen is housed outside of the general population. At the time of the challenged incident, Mr. Jensen resided in the BAR unit at WSP, where offenders who are considered vulnerable are housed. *See In re Jensen*, 178 Wash.App. 1035 (Unpublished opinion), 2013 WL 6859796 (Dec. 30, 2013).

Seg") "pending investigation of threats to staff" by DOC employees John Avery and Ronald Knight (who are not parties to this action). Dkt. 63, ¶ 15, Exhibit F. Defendant Sinclair was made aware of the allegations by an email from Administrative Assistant Pam Moore dated August 14, 2010.  Defendant Sinclair responded to the email stating: "This sounds like a threat against staff and it names an offender so we should get on this immediately." Dkt. 63, ¶ 15, Exhibit G.

Mr. Jensen's placement in Ad Seg was reviewed on August 24, 2010, and Defendant Sundberg recommended he be kept in Ad Seg pending review of the confidential information. Dkt. 63, ¶ 16. On August 24, 2010, Mr. Jensen wrote a kite to Defendant Sinclair "which outlined my contention that my placement in Administrative Segregation was a form of retaliation by DOC staff for my PREA hotline report." *Id.*, ¶ 17, Exhibit H. On August 29, 2010, Mr. Jensen sent a kite to Defendant Sundberg asking why he was still in Ad Seg and was told that his behavior was under investigation. *Id.*, ¶ 17, Exhibit I.

On September 2, 2010, a hearing officer ruled that the allegation lacked merit and the infraction was dismissed. *Id.*, ¶ 20. Mr. Jensen sent a series of kites in September 2010 regarding his continued placement in Ad Seg and received responses from Defendant Sundberg regarding his release and acceptance to WSP BAR, but on September 21, 2010, was told by Defendant Sundberg that he would have to wait for the BAR review to be released from Ad Seg. *Id.*, ¶¶ 21-24, Exhibits K-L. Mr. Jensen was released from Ad Seg on September 22, 2010. *Id.*, ¶ 25.

According to Liza Rohrer, DOC Correctional Program Manager and Classification and Case Management Administrator, the policy in effect at the time Mr. Jensen was in Ad Seg from August 16, 2010, until September 22, 2010, was DOC Policy 320.200. Dkt. 68, Declaration of Liza Rohrer, ¶¶ 4-7, Exhibit 1. Under Section III.A of Policy 320.200, Mr. Jensen was entitled to an initial placement hearing scheduled within 2 working days, and on August 16, 2010, Mr.

REPORT AND RECOMMENDATION - 4

Jensen was given a DOC 05-797 Ad Seg/IMU Review Notice/Appearance Waiver form which he signed after checking the box advising him "You may appeal the decision and/or sanctions to the Facility Superintendent/designee." *Id.*, ¶¶ 8-9, Exhibit 2. On August 17, 2010, he was given a second Ad Seg/IMU Review Notice/Appearance Waiver giving him notice of future Ad Seg dates, again advising him of his appeal rights. *Id.*, ¶ 10, Exhibit 3.

### 3.    January 19, 2011 – March 5, 2012 Segregation

In January 2011, allegations were made against Mr. Jensen that he was soliciting other inmates for sex. Dkt. 63, ¶ 28. Mr. Jensen was placed in Ad Seg and was not released until 410 days later on March 5, 2012. During this time, he sent kites to, and received replies from, Defendants Sinclair and Sundberg; an investigation was conducted; his Ad Seg status was reviewed; and Mr. Jensen was recommended for a six-month intensive management program and placed on intensive management status ("IMS"). *Id.*, ¶¶ 29-46, Exhibits M-W. He alleges that although Defendant Sinclair signed the report finding the PREA allegations against him were unsubstantiated on June 17, 2011, he remained in Ad Seg on the recommendation of Defendant Sundberg to complete the "Offender Change Program" before he could be released. Id. ¶¶ 47-52, Exhibits X-7. Mr. Jensen alleges that he completed all that was asked of him by October 2011, but he was not released until March 5, 2012. Id., ¶¶ 53-42.

According to Ms. Rohrer, Mr. Jensen signed an Ad Seg/IMU Review Notice/Appearance Waiver on January 21, 2011. This form contained the language "You may appeal the decision and/or sanctions to the Facility Superintendent/designee." Dkt. 68, Rohrer Decl., ¶ 11, Exhibit 4.

On April 5, 2011, a decision was made by the IMS Committee that Mr. Jensen should be placed on IMS with maximum custody. Dkt. 68, Rohrer Decl., ¶¶ 12-13, and Exhibit 5 (Custody Facility Plan Review). DOC Policy 320.250 Intensive Management Treatment Status

1    Placement/Transfer/Release, effective date 07/09/09 governed placement of an offender on IMS.

2    *Id.*, ¶ 16, Exhibit 6. Section VI, E. of the policy provides that "[o]nly the Assistant Secretary for

3    Prisons/designee has the authority to assign or release an offender from IMS/ITS." *Id.*

4        Mr. Jensen signed an Ad-Seg/IMU Review Notice/Appearance Waiver on July 21, 2011

5    giving him notice of further Ad Seg hearings and advising him that he could have appealed the

6    decision or sanctions to the facility superintendent. *Id.*, ¶ 17. Two more classification reviews

7    were held on September 12, 2011, and on December 19, 2011. The IMS Committee reviewed

8    Mr. Jensen's classification on February 15, 2012 and released him from IMS and promoted his

9    custody from Maximum custody to Medium custody at that time. *Id.*, ¶¶ 18.

10        According to Ms. Rohrer, offenders who are assigned an IMS assignment with Maximum

11    custody level are deemed to present an immediate and/or serious threat to security and safety of

12    the facility, the offender, or others. Offenders who are considered for placement on IMS or

13    Maximum custody can only be assigned or removed from this type of placement by the Assistant

14    Secretary of Prisons or designee. *Id.*, ¶ 19.

15        The DOC did not have an appeal process for the assignment of IMS on April 5, 2011.

16    DOC Policy 300.380, Classification and Custody Facility Plan Review, effective date October

17    10, 2011, includes Section X newly added that provides for appeals of IMS assignments to the

18    Assistant Secretary for Prisons. *Id.*, ¶ 22, Exhibit 8. Mr. Jensen did not appeal his placement on

19    IMS once the appeal process was established. Mr. Jensen was released from the Intensive

20    Management Status program on February 15, 2012. *Id.*, ¶ 23. Thereafter, the DOC revised the

21    appeal process for offenders placed on IMS, effective 06/14/12 in Policy 320.200 allowing the

22    offender "24 hours from the time s/he is notified of the decision [to place the offender on an

23    Intensive Management Status] to appeal to the Assistant Secretary in writing." *Id.*, Exhibit 9.

### 4.    2010, 2011, 2012 Segregations

Mr. Jensen alleges that during the time he was held in Ad Seg (August 16, 2010 to September 22, 2010, and January 19, 2011 to March 5, 2012), he was unreasonably deprived of his prescribed medications, the necessary time to use a prescribed pumice stone to self-excoriate his foot callous, and reasonable relief from migraines and headaches by constant illumination in his cell. Dkt. 63, ¶ 55.

### 5.    July 3, 2011 Infraction

This infraction is not included as a claim in Mr. Jensen's Amended Complaint nor is it addressed in the summary judgment pleadings.

Mr. Jensen alleges that on July 3, 2011, he was forced to defecate in his shirt after corrections staff ignored his signals to use the toilet facilities and he was infracted for failing to defecate in an authorized receptacle. He claims he has a documented medical condition where he suffers sudden and urgent needs to defecate. Dkt. 54-3 at 12.

### 6.    Custody Classification

This claim is not asserted in Mr. Jensen's Amended Complaint.

In this claim, Mr. Jensen contends that he is being wrongfully classified as de facto life without possibility of parole (LWOPP) and placed on closed-custody due to his anticipated age at the time of his release. Dkt. 54-3, 12-13. Mr. Jensen appealed his custody classification on October 28, 2014. *Id*. at 13.

### 7.    Legal Mail

In his Amended Complaint, Mr. Jensen alleges only "that he was subject to retaliation on other occasions including . . . his legal mail was improperly reviewed." Dkt. 32 at 6. Based on

his declaration and documents provided by defendants, the Court has compiled the following facts surrounding this claim, which involve two mailings handled by the MCC mailroom.

      **a)**      **October 29, 2014**

On November 2, 2014, Mr. Jensen filed an initial Offender Complaint stating that on October 29, 2014, Corrections Officer Bass delivered to Mr. Jensen an envelope addressed to Mr. Jensen from the Law Office of Harris Williams, marked in front and back as "LEGAL MAIL", which had been opened and resealed with a small piece of scotch tape. Dkt. 63, Exhibit AA (Offender Complaint No. 14575596). Lori Schneider, a MCC mailroom employee wrote and initialed on the front of the envelope "Legal Source Not Recognized LS." *Id.* The response to the Offender Complaint reads:

> Mr. Harry Williams should have used his public mailing address that you
> provided of his Law Office. The PO Box address is unclear to verify his status as
> a legal entity.

*Id.* On November 5, 2014, Mr. Jensen wrote to Defendant Warner demanding that DOC staff cease and desist the opening of his legal mail when he is not present. Dkt. 63, ¶ 60. On November 15, 2014, Roy Gonzalez responded to Mr. Jensen's letter, advising that Mr. Jensen's complaint about staff conduct is grievable and may be reported via an offender complaint form. Dkt. 54. Smith Decl., Exhibit 4 at 5.

      **b)**      **December 24, 2015**

On December 24, 2015, Mr. Jensen wrote a letter to Governor Inslee requesting an investigation "into the retaliation DOC employees had subjected me to." According to Mr. Jensen, the response he received from the Governor's Assistant Legal Counsel on January 4, 2016, had been opened by "someone" "using regular inmate mail delivery procedures" before it was delivered to him. Dkt. 63, ¶ 64, Exhibit EE.

REPORT AND RECOMMENDATION - 8

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude judgment as a matter of law.  Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v Catrett*, 477 U.S. 317, 324 (1986). The non-moving party may not "rely merely on allegations or denials in its own pleadings." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  *Id*.

**DISCUSSION**

**A.    Statute of Limitations**

Federal courts apply the forum state's personal injury statute of limitations to §1983 claims. *See Wilson v. Garcia*, 471 U.S.261, 276 (1985). A three year statute of limitations applies in Washington. RCW § 4.16.080; *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). Similarly, the statute of limitations for both ADA and WLAD claims is three years. *Knight v. Washington State Department of Corrections*, 147 F.Supp.3d 1165, 1169–70, (W.D. Wash. 2015); *Antonius v. King Cnty.*, 153 Wash. 2d 256, 261–62, 103 P.3d 729 (2004).

Federal law determines when a civil rights claim accrues. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999). A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir.1996); *see*

*also Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.2001), (quoting *Tworivers*, 174 F.3d at 992). The proper focus is upon the time of the acts, not upon the time at which the consequences of the acts became most painful. *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979).

The date of filing of Mr. Jensen's original complaint for purposes of this analysis is December 22, 2016 – the date he submitted his original complaint with his IFP application (even though his IFP application was denied and he later paid the filing fee). *See Escobedo v. Applebees*, 787 F.3d 1226, 1233–1234 (9th Cir. 2015) ("a complaint will be deemed filed at the time it is delivered to the clerk with an IFP application," even if it is denied, and "no time will be deducted from any limitations period while the application awaits a ruling"). Therefore, any claims commencing before *December 22, 2013* are time barred.

With the foregoing principles in mind, the Court turns to Mr. Jensen's claims and concludes that all of his claims, except the custody classification and legal mail handling claims, are barred by the statute of limitations and should be dismissed.

### 1.    First Amendment Retaliation (May 10, 2010, PREA Report)

Mr. Jensen alleges the systematic retaliation against him and others in his unit began within weeks of his PREA report against the DOC official. In fact, Mr. Jensen was infracted based on a revised shower schedule instituted shortly after he made the PREA report and he sent a letter to Defendants Vail and Sinclair asking them to intervene in the alleged retaliatory misconduct on July 15, 2010. Thus, Mr. Jensen knew or should have known the basis of his retaliation claim when the infraction was issued against him or at least by July 15, 2010, the date of his letter to DOC officials complaining of the retaliation.

Mr. Jensen makes the broad and unsupported allegation that retaliatory conduct by unidentified DOC officials continued well after he made the 2010 PREA complaint (*See* Dkt. 62,

REPORT AND RECOMMENDATION - 10

1    at 2-3) and indeed, he attempts to connect all conduct after 2010 to this exercise of his

2    constitutional right. However, he provides no factual support to come to such a conclusion and

3    has certainly produced no admissible evidence to support such a broad allegation of retaliation.

4    There is no evidence of a link between the exercise of constitutional right (making the 2010

5    PREA report) and the allegedly unknown retaliatory conduct spanning the past eight years by

6    unknown individuals. There is also no demonstration that Mr. Jensen's First Amendment rights

7    were actually chilled by any alleged retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807

8    (9th Cir.1995); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

9    More importantly, the retaliatory acts which are alleged all occurred in 2010, 2011, and

10   2012 – dates which are all well beyond the December 22, 2013 statute of limitations. Dkt. 63,

11   Jensen Decl. ¶¶ 6-55. Mr. Jensen filed his lawsuit on this claim on December 22, 2016.

12   Therefore, his claims regarding the May 10, 2010, PREA Report are barred by the expiration of

13   the statute of limitations and the undersigned recommends that they be dismissed.

14       2.    **Fifth Amendment (August 16, 2010 – September 22, 2010 Segregation)**

15   Mr. Jensen alleges his Fifth Amendment rights were violated when he was infracted and

16   placed in segregation for threatening to harm staff – allegations which were later found to be

17   without merit. Based on these allegations, Mr. Jensen knew or should have known the basis of

18   his claim when the infraction was issued, when the infraction was dismissed on September 2,

19   2010, or at the latest, when he was released from Ad Seg on September 22, 2010. In fact, on

20   August 24, 2010, Mr. Jensen wrote a kite to Defendant Sinclair "which outlined my contention

21   that my placement in Administrative Segregation was a form of retaliation by DOC staff for my

22   PREA hotline report." *Id.*, ¶ 17, Exhibit H.

23

1    Because Mr. Jensen did not file his lawsuit on this claim until December 22, 2016, his

2    August 16, 2010 – September 22, 2010 claims are barred by the expiration of the statute of

3    limitations and the undersigned recommends that they be dismissed.

4        **3.**    **Fifth and Eighth Amendment (January 2011 – March 2012 Segregation)**

5        Mr. Jensen alleges that his placement in Ad Seg for 410 days on what were later shown to

6    be unsubstantiated charges violated his Fifth and Eighth Amendment rights. The investigative

7    report finding the allegations against him were unsubstantiated was signed on June 17, 2011 and

8    he was released from Ad Seg after being placed on Intensive Management Status (IMS) on

9    March 5, 2012. Thus, Mr. Jensen knew or should have known the basis of his claims by June 17,

10    2011 and at the very latest, when he was placed on IMS, or even by the time he was released on

11    March 5, 2012, but he did not file his complaint until December 22, 2016.

12        Mr. Jensen argues he had not yet exhausted his administrative remedies with regard to

13    this claim and therefore, the statute of limitations should be tolled. The statute of limitations is

14    tolled while an inmate engages in the process of exhausting his administrative remedies. *Brown*

15    *v. Valoff*, 422 F.3d 926, 942–43 (9th Cir.2005); *Soto v. Sweetman*, 882 F.3d 865, 869-870 (9th

16    Cir. 2018) (The exhaustion process is defined by the state's prison administrative remedies).

17        There are two exhaustion processes involved here – the first is whether Mr. Jensen

18    exhausted his available administrative remedies for his Ad Seg placement; the second is whether

19    he exhausted his available administrative remedies for IMS placement. The record reflects that

20    he had already exhausted his administrative remedies as to the former issue as of August 9, 2011,

21    and failed to file suit in a timely manner and as to the latter, he could have appealed that

22    placement any time between October 10, 2011 and June 14, 2012, but failed to do so.

23

After he was released from Ad Seg on March 5, 2012, Mr. Jensen waited over two years, until October 28, 2014, to write a letter to Defendant Sinclair seeking to appeal his "placement, assignment and retention in Ad-Seg on IMS between January 19, 2100 to March 5, 2012 and August 16, 2010 to September 22, 2010." Dkt. 63, ¶ 57, Exhibit Z. DOC Deputy Director Earl Wright responded, stating that a response to Mr. Jensen's appeal was written on December 9, 2014. *Id.*, Ex. DD. Mr. Jensen did not include a copy of the December 9, 2014, letter, but a copy of the letter is attached to the Declaration of Lisa Rohrer. Dkt. 68, Rohrer Decl., Ex. 10. Ms. Rohrer wrote the December 9, 2014, letter in response to a separate appeal to her and in it, she points out to Mr. Jensen that his remedy was to have appealed back in 2011-2012:

> In April 2011, policy did not grant an appeal process for offenders assigned to an Intensive Management Status Program. The Department of Corrections Policy 320.250, revision date of July 9, 2009, entitled, "Intensive Management/ Treatment Status Placement/Transfer/Release", section (VI) (E) noted, "Only the Assistant Secretary for Prisons/designee has the authority to assign or release an offender from IMS/ITS."
>
> The revised version (October 17, 2011) of Policy 300.380, Classification and Custody Facility Plan Review, section (X) (D) did grant offenders the right to appeal assignments for IMS to the Assistant Secretary of Prisons. As you were still on assignment for an IMS program, at that time you could have appealed your placement to the Assistant Secretary.
>
> The updated policy revisions (April 14, 2014) to Policy 300.380, Classification and Custody Facility Plan Review, does grant offenders the right to appeal classification decisions made by the Headquarters Classification Unit. This revision to policy is not retroactive. It also would not apply to your particular situation, as the decision to assign you to an IMS program was not made by the Headquarters Classification Staff, it was made by the Assistant Secretary of Prisons/designee.

Dkt. 68, Rohrer Decl., Ex. 10.  Thus, according to Ms. Rohrer, Mr. Jensen could have appealed his IMS placement under the original Policy 320.200 between October 10, 2011, and June 14, 2012. Dkt. 68, Rohrer Decl. ¶ 24.

REPORT AND RECOMMENDATION - 13

As to his Ad Seg placement, Ms. Rohrer explains that Mr. Jensen exhausted his administrative remedies on August 9, 2011, when he received a letter from John Campbell, DOC Correctional Specialist, in response to kites and letters he had written, stating that all of his appeals were denied:

> In your letter dated May 11, 2011 (in which you attached an impressive packet addressed to WSP Superintendent Steve Sinclair, received by WSP on May 22, 2011), you describe a series of incidents and experience which you feel are retaliation for being a "whistleblower" and seek redress. I have been in contact with Superintendent Sinclair recently and he has reviewed your concerns. The allegations you make have [sic] are not substantiated. You allege a widespread conspiracy requiring collusion between staff and offenders and after review this is found not to be the case. Your repeated behavior is the reason for your placement on an IMS program. During my contact with Superintendent Sinclair we agreed this would also serve as a reply to your May 11th correspondence with his office.

Dkt. 68, Rohrer Decl. ¶27, Ex. 11.

To summarize, Mr. Jensen did not appeal his IMS placement until October 28, 2014, when it was two years too late. Therefore, exhaustion of administrative remedies as to his IMS placement claim is not relevant to the tolling question.[4] And, because Mr. Jensen exhausted his administrative remedies as to his Ad Seg placement on August 9, 2011, he would have had every opportunity to file a complaint on his Ad Seg placement claim within the statute of limitations from August 9, 2011, when his appeals from Ad Seg were denied, until December 22, 2013, three years before he filed suit. Therefore, he is not entitled to equitable tolling on his Ad Seg placement claim. *Soto,* 882 F.3d at 874 (Where a plaintiff could have filed within the statute of limitations if he had been diligent, he is not entitled to equitable tolling).

---

[4] As correctly noted by Defendants, Mr. Jensen's failure to exhaust this portion of his claim by making a timely appeal raises another basis to dismiss this claim. *See* Section 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")

REPORT AND RECOMMENDATION - 14

Accordingly, the undersigned recommends that Mr. Jensen's claims regarding his January 2011 – March 2012 segregation be dismissed.

### 4.    2010, 2011, 2012 Lack of Medical Care

Mr. Jensen alleges that during the time he was held in Ad Seg (August 16, 2010 to September 22, 2010, and January 19, 2011 to March 5, 2012), he was unreasonably deprived of prescribed medications, use of a prescribed pumice stone to self-excoriate his foot callous, and reasonable relief from migraines and headaches by constant illumination of his cell, all in violation of the ADA and WLAD. Dkt. 63, ¶ 55. Mr. Jensen knew, or reasonably should have known the basis for these claims when the harmful act or omission occurred – that is, when he was deprived of his medications and pumice stone and subjected to constant illumination. Because Mr. Jensen did not file a lawsuit based on any of these alleged deprivations until December 22, 2016, these claims are barred by the expiration of the applicable statutes of limitations and the undersigned recommends that they be dismissed.

### 5.    July 3, 2011 Infraction

Mr. Jensen alleges that his Eighth Amendment right against cruel and unusual punishment was violated on July 3, 2011, when he was forced to defecate in his shirt after corrections staff ignored his signals to use the toilet facilities and he was infracted for failing to defecate in an authorized receptacle. Dkt. 54-3 at 12. Mr. Jensen knew, or reasonably should have known the basis for this claim on July 3, 2011, when the alleged punishment occurred. As previously noted, this claim is asserted only in Mr. Jensen's discovery answers. In addition, because this claim is barred by the expiration of the statute of limitations, the undersigned recommends that it be dismissed.

1    **B.    Custody Classification**

2         Mr. Jensen states that inmates who are eighty or older at time of release are classified as

3    Defacto LWOPP and placed on closed-custody and therefore, an inmate incarcerated for the

4    same crime with the same criminal history could be placed on a lower level of custody than

5    himself. Dkt. 54-3, 12-13. For this reason, Mr. Jensen claims he has been wrongfully classified

6    and is being discriminated against because of his age.

7         This claim is not asserted in Mr. Jensen's Amended Complaint nor is it addressed in Mr.

8    Jensen's opposition to Defendants' motion for summary judgment. Moreover, with respect to

9    Mr. Jensen's allegation that defendants have improperly classified him as "Defacto LWOP,"

10    inmates do not have a constitutional right to a particular classification status, *Moody v. Daggett*,

11    429 U.S. 78, 88 n. 9 (1976); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). This is true

12    even where the facility or classification is "substantially less agreeable" and visits a "'grievous

13    loss' upon the inmate." *Moody*, 429 U.S. at 88, n. 9. Moreover, prison officials are afforded

14    deference in their decisions as to the "ordinary incidents of prison life [.]" *Sandin v. Connor*, 515

15    U.S. 472, 482–83 (1995). *See also Meachum*, 427 U.S. at 229 ("The federal courts do not sit to

16    supervise state prisons, the administration of which is of acute interest to the states."). For these

17    reasons, the undersigned recommends this claim be dismissed.

18    **C.    Legal Mail**

19         Defendants contend they are entitled to qualified immunity as to Mr. Jensen's claims

20    regarding the opening of his legal mail outside his presence in 2014 and 2016. Dkt. 53 at 9-11.

21    Dkt. 53 at 9-11.

22         "[Q]ualified immunity protects government officials 'from liability for civil damages

23    insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established." *Saucier*, 533 U.S. at 201.

A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 231-32. The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative. *See e.g.*, *Tibbetts v. Kulongoski*, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

At the time of the alleged violation, the question of "[w]hether legal mail may be opened outside the inmate's presence [was] an open question in the Ninth Circuit." *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981). The Ninth Circuit stated it has "not yet decided the issue." *Id.* In a pair of recent cases, the Ninth Circuit held that the United States Constitution protects the confidentiality of an inmate's "legal mail," that is, properly marked correspondence with a civil or criminal attorney, in that such mail may be opened and inspected for contraband in the inmate's presence, but may not be read by prison officials absent a legitimate penological interest in doing so. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210–1211 (9th Cir. 2017); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017).

Federal law does not afford the same protection to an inmate's correspondence with the courts, public officials, and public agencies. Such "regular" or "non-legal" mail is not confidential under federal law and may be opened and read outside the inmate's presence. *See Hayes*, 849 F.3d at 1211 (citing *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996); *Hamilton v. Dep't of Corr.*, 43 Fed.Appx. 107, 107 (9th Cir. 2002) (holding that although the prisoner-plaintiff had a right to correspond confidentially with certain public officials and agencies under California law, "no such federal constitutional right exists") (citing *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (holding that legitimate penological interests justified a prison mail policy that treated grievances sent to some public officials and agencies as regular mail that could be opened and read by prison officials).

Based on the foregoing, the undersigned concludes the mailing received from the Governor's office is not entitled to First Amendment protection of confidential legal mail as it was not mail from Mr. Jensen's lawyer. *Cf. Keenan*, 83 F.3d at 1094; *Hall v. Pelican Bay State Prison*, 2014 WL 4364856, at *4 (N.D. Cal. Sept. 3, 2014) ("Only mail from [inmate's] own attorney (and not mail from opposing counsel or from a public agency or court) would be [defined as] confidential legal mail.").

The October 29, 2014 mailing, which was from a law firm and marked as "legal mail," is clearly entitled to First Amendment protection as confidential legal mail. However, Mr. Jensen has failed to show a violation of constitutional law in how this mail was handled. First, there is no evidence that any of the named defendants improperly opened and read this mail. Mr. Jensen's evidence indicates only that Lori Schneider, a MCC mailroom employee, who is not named as a defendant in this lawsuit, did not recognize the return address on the envelope because it was mailed from a post office address and not the "public mailing address that [Mr.

Jensen] provided" of his lawyer's address, and that the envelope was opened to verify the lawyer's legal entity status. While mail sent from a prisoner's lawyer should be opened in the presence of the prisoner, this protection applies only where the jail can identify the mail as being sent from the prisoner's lawyer. Here, the letter sent from counsel did not bear the address of counsel that Mr. Jensen provided. Prison staff therefore did not open the letter in violation of the constitution. *See e.g. Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have right to have their **properly marked** legal mail opened in their presence).

More importantly, it must be remembered Mr. Jensen alleges his mail was intentionally mishandled *because* he made the PREA complaint in May 2010 against the DOC officer at WSP. Here, we have a mailing opened by a corrections officer (who is not named as a defendant) at a different institution (MCC) over four years later (October 2014), and no evidence of retaliatory intent. Mr. Jensen does not allege, or provide any admissible evidence to show, that Ms. Schneider knew of the May 2010 PREA complaint and that because of that complaint she intentionally opened and read his legal mail four years later. There is simply no evidence from which the Court may reasonably infer, either directly or from surrounding circumstances, that Ms. Schneider was acting with retaliatory motive. *See e.g., Vasquez v. County of L.A.,* 349 F.3d 634, 646 (9th Cir.2003) (finding no causal link where "the protected activity occurred thirteen months prior to the alleged adverse action" and the plaintiff failed to provide other "evidence of surrounding circumstances that show a retaliatory motive"); *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002) ("A nearly 18-month lapse between the protected activity and adverse employment action is simply too long, by itself, to give rise to an inference of causation.").

1      Hence, because Mr. Jensen fails to establish a link between the exercise of constitutional

2  rights and the alleged retaliatory conduct, this claim should be dismissed.

3  **D.      Amending Complaint**

4      In his opposition, Mr. Jensen asks the Court to deny Defendants' motion for summary

5  judgment without prejudice or to allow him a one month continuance to allow him to "amend his

6  complaint and include the gravamen of the claims originally filed and the defendants he named

7  in his original complaint which he filed [] pro se." Dkt. 62 at 4. Separately, he filed a motion to

8  amend complaint and add defendants. Dkt. 64. The undersigned has denied the motion under

9  separate Order.

10      For purposes of this motion, justice does not require that Mr. Jensen be given an

11  extension of time to respond or to further amend his complaint. Mr. Jensen has already filed a

12  timely response to the summary judgment motion. As to the proposed amendment, Mr. Jensen

13  waited until over two months after the close of discovery and three weeks after Defendants'

14  motion for summary judgment was filed to seek to add parties already known to him (they were

15  named in his original complaint). Moreover, the proposed amendment is futile as the alleged

16  conduct of the proposed parties occurred in 2010 and 2011, which as discussed herein, is well

17  beyond the applicable statutes of limitations. *See also, Schlacter-Jones v. General Telephone of*

18  *California*, 936 F.2d 435, 443 (9th Cir. 1991). "A motion for leave to amend is not a vehicle to

19  circumvent summary judgment."

20  **E.      Defendants' Motion to Strike**

21      Defendants move to strike various portions of Mr. Jensen's declaration pursuant to Fed.

22  R. Civ. P. 56(e), which requires that affidavits supporting and opposing a motion for summary

23  judgment "shall be made on personal knowledge, shall set forth such facts as would be

REPORT AND RECOMMENDATION - 20

admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein."

Defendants ask the Court to strike Mr. Jensen's "speculations" that unidentified DOC employees retaliated against him because he failed to assert any actual evidence showing that DOC employees were acting with retaliatory motives. Dkt. 67 at 7 (citing Dkt. 63, Jensen Decl., ¶¶ 8, 9, 10, and 11). To the extent that the evidentiary material submitted by Mr. Jensen is speculative or represents legal conclusions, the Court has not factored that material into its decision.

Defendants further move to strike Mr. Jensen's reference to a statement by his fellow inmate Joel Zellmer, as inadmissible hearsay. Dkt. 67 at 7 (citing Dkt. 63, Jensen Decl., ¶¶ 8-11). Hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is not admissible except as provided by the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 802. Statements which were made outside of court, not by the affiant, and that are offered in evidence to prove the truth of the matter asserted cannot be considered on a motion for summary judgment. *Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009). Mr. Jensen's reference to the statement made by Mr. Zellmer is inadmissible hearsay and therefore, it has not been considered by the Court in its decision.

## CONCLUSION

The Court recommends **GRANTING** defendants' motion for summary judgment (Dkt. 53) and **dismissing** plaintiff's claims **with prejudice.**

REPORT AND RECOMMENDATION - 21

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order.  Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 15, 2018.**  The Clerk should note the matter for **May 17, 2018**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed seven (7) pages.  The failure to timely object may affect the right to appeal.

DATED this 24th day of April, 2018.


BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 22